

FILED
AUG 1 8 2005
UNITED STATES
BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# UNITED STATES BANKRUPTCY COURT
## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>SWTV PRODUCTION SERVICES, INC.,<br><br>HD PARTNERS, LLC,<br><br>Debtors. | Chapter 11 Proceedings<br>(Joint Administration)<br><br>Case No. BR-03-09489-PHX-CGC<br><br>Case No. BR-05-00370-PHX-GBN |
| HD PARTNERS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>EQ ACQUISITIONS 2003, INC.,<br><br>Defendant.<br><br>GREYSTONE CDT ASSOCIATES, LLC;<br><br>Applicant for Intervention. | Adv. No. 05-00287<br><br>UNDER ADVISEMENT DECISION RE: HD PARTNERS' MOTION FOR SUMMARY JUDGMENT AND GREYSTONE CDT ASSOCIATES MOTION TO INTERVENE |

Under Advisement is Greystone CDT Associates, LLC's ("Greystone") Motion to Intervene and Plaintiff HD Partners, LLC's ("HDP") and Defendant EQ Acquisitions 2003, Inc. ("EQ") Motions for Summary Judgment, on which the Court heard oral argument on August 9, 2005. A decision on the Motion to Intervene hinges on the outcome of the Motions for Summary Judgment and, as such, the three will be resolved together in this decision.

The secured transaction at issue here arose in 2004 between Debtor SWTV Production Services, Inc. ("SWTV") and Sony Financial Services, Inc. ("Sony") under a Master Loan Agreement that allowed SWTV to acquire certain television production equipment, primarily a mobile production unit referred to previously by the parties as "Bonnie and Clyde" and certain

equipment installed in Bonnie and Clyde and related to its operation.

Subsequently, SWTV filed for Chapter 11 protection and Sony ultimately objected to SWTV's proposed Plan. Ultimately, the parties reached an agreement calling for, inter alia, Sony to consent to the Plan and to reduce its claim from $5,118,703.20 to $4,300,000, and for SWTV to affirm all provisions of the Master Loan Agreement as modified by the stipulation and to agree that Core Digital Acquisition ("CDA"), as successor in interest to SWTV, be also bound by the Master Loan Agreement. Defendant EQ, as successor in interest to Sony, claims a security interest in such equipment under the original Master Loan Agreement and seeks to foreclose on its security interest as a result of the loan now being in default post-confirmation.

No one disputes these facts. The wrinkle lies in exactly what equipment secures EQ. While this would seem an easy question to answer, the true nature of the status of the Bonnie and Clyde trailer and its equipment has become a moving target, largely due to the ever-changing stories of HD and its primary declarant Scott Barker. In an effort not to confuse the current state of facts further, the Court will forego reciting all the apparent inconsistencies, changes in story, and other fancy footwork of Mr. Barker, as the Court pointed many of them out at the hearing. Suffice it to say, counsel for HD encouraged the Court not to rely on Mr. Barker's declarations to resolve these matters. In addition, the Court was able to whittle its way down to what appears to be the agreed facts between the parties and they appear to be as follows.

Sometime before 2004, CDA, as successor in interest to SWTV, determined that the original Bonnie and Clyde mobile production unit was not capable of covering golf events in high definition format.[1] It was determined that additional trailers were needed, and CDA acquired and built two new trailers, naming one "Clyde" and the other "Nemo."[2] The original Bonnie and Clyde unit's name was then renamed simply "Bonnie." It appears that some of the equipment that was originally installed in the original Bonnie and Clyde unit was moved to the new Clyde unit.

---

[1]This statement is contrary to at least one of Mr. Barker's declarations, but appears now to be fairly accepted.

[2]EQ claims no interest in Nemo or its contents.

- 2 -

In addition, brand new equipment purchased by CDA was installed in Clyde.

To make matters more confusing, however, Bonnie and Clyde, as two separate trailers, were subsequently disassembled at a repair site in New Jersey after experiencing alleged technical difficulties. The repair process has since come to a halt, and the trailers sit empty and the removed equipment shrink wrapped and placed on pallets on the floor of the New Jersey repair facility. Based on this current state, the parties agree that EQ's collateral consists of the newly renamed Bonnie trailer, any equipment that was removed from the Bonnie trailer and placed on the floor of the New Jersey facility, and any equipment removed from the original Bonnie and Clyde trailer, reinstalled in the new Clyde trailer, and then subsequently removed from Clyde and placed on the floor of the New Jersey facility. The parties agree that EQ has no interest in the Clyde trailer itself, not having received a motor vehicle department lien on that trailer. That leaves one category of equipment still in dispute – the new equipment installed in Clyde but never installed in the original Bonnie and Clyde or the new Bonnie.

According EQ, this new equipment is its collateral because it constitutes an attachment, accession, or betterment to Bonnie as provided in the Master Loan Agreement and Financing Statement. The Financing Statement lists the covered collateral as not only "[a]ll goods and equipment now owned, leased or used and hereafter owned, leased or used by Debtor" under the Master Loan Agreement, but also "any attachments, accessions and additions thereto, substitutions and replacements therefore, and related general intangibles." Similarly, EQ's loan document schedules contain similar language stating that its security interest also reaches "all additions, attachments, accessories, substitutions, replacements, repairs, improvements, betterments and appurtenances of whatever description or nature." EQ argues that because Clyde was purchased to improve or upgrade Bonnie, the equipment located within in it is directly an accession, replacement or betterment of Bonnie.

HD counters that these items cannot be accessions to Bonnie because they were not installed in Bonnie but were installed in Clyde, in which EQ admits it has no security interest. To allow such a security interest regardless, according to HD, would grant EQ a substantial windfall. Further, HD contends that Bonnie can function with its original equipment without

- 3 -

Clyde, such that the equipment in Clyde cannot be considered essential or integral to Bonnie's functioning.

The language of the security agreement is broad, however, and includes not only additions, accessions, and betterments, which HD addresses, but it also includes substitutions, replacements, repairs, improvements, and appurtenances of whatever nature. Whether the new equipment falls into any of those categories cannot be determined on this record on summary judgment. There simply is no evidence that adequately identifies what these pieces of new equipment are, where they were installed, how they were installed, for what purpose they were installed, how they modify or enhance Bonnie, if at all, etc. In addition, while the parties appear to agree that EQ's collateral includes any equipment installed in the original Bonnie and Clyde and either removed as part of the disassembly of all of the trailers or removed and reinstalled in Clyde (only to be removed against as part of the disassembly of all the trailers), there is no agreement or record before the Court to determine exactly which pieces of equipment fall into these two categories.

For the foregoing reasons, the Court denies the Motions for Summary Judgment. That leaves Greystone's Motion to Intervene to assert a senior lien on the disputed equipment. Despite EQ's protestations to the contrary, it makes better sense in the interests of judicial economy to allow Greystone to intervene as a defendant/cross claimant in this matter so that all interests to this property can be litigated at one time. Therefore, Greystone's motion will be granted. Counsel for EQ Acquisitions shall lodge a form of order consistent with this Court's decision for signature.

In addition, Greystone shall have ten (10) days from the date of this decision to file its answer and any cross-claim.[3] EQ shall have ten (10) days thereafter to reply. The parties shall further appear before this Court on **October 19, 2005, at 11:00 a.m. at 230 N. 1st Avenue, Phoenix, Arizona, for a Rule 16(b) Scheduling Conference** prior to the Rule 16(b) Scheduling Conference, the parties shall have met and conferred as required by Bankruptcy Rule 7026 and

---

[3] Because Greystone is seeking affirmative relief on the priority of its lien, Greystone should cross-claim against EQ.

- 4 -

have made their initial disclosures and narrowed the issues left for determination.

So ordered.

DATED: Aug 18, 2005

_____
CHARLES G. CASE II
United States Bankruptcy Judge

COPY of the foregoing mailed and/or via facsimile
this ___ day of August, 2005, to:

OFFICE OF THE U.S. TRUSTEE
P.O. Box 36170
Phoenix, Arizona 85067-6170

Philip G. Mitchell
Craig J. Bolton
Jennings, Haug & Cunningham, LLP
2800 N. Central Ave., Suite 1800
Phoenix, Arizona 85004-1049
Attorneys for Defendant EQ Acquisitions 2003, Inc.

Michael W. Carmel
Michael W. Carmel, Ltd.
80 E. Columbus Ave.
Phoenix, Arizona 85012
Attorneys for Azcar USA, Inc.

Adam Hiller Pepper Hamilton, LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
Wilmington, Delaware 19801
Attorneys for Azcar USA, Inc.

Edwin B. Stanley
Edwin B. Stanley, P.C.
2400 E. Arizona Biltmore Circle, Suite 1290
Phoenix, Arizona 85016
Attorneys for Plaintiff HD Partners, LLC

Hilary L. Barnes
Quarles Brady Streich Lang
2 N. Central Ave.
Phoenix, Arizona 85004-2391
Attorneys for Greystone CDT Associates

K. Layne Morrill
Morrill & Aronson, PLC

- 5 -

1  1 E. Camelback Rd., Suite 340
   Phoenix, Arizona 85012-1648
2  Attorneys for Greystone CDT Associates

3  Shelton L. Freeman
   DeConcini, McDonald, Yetwin & Lacy, PC
4  2025 N. 3rd Street, Suite 230
   Phoenix, Arizona 85004-1472
5  Attorneys for Debtor SWTV Production Services, Inc.

6  /s/ [signature]